IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER F. WARD,<br><br>Defendant. | Case No. 4:19-cr-00101-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.   INTRODUCTION

Pending before the Court is Defendant Christopher F. Ward's Motion to Compel Discovery. Dkt. 45. Having reviewed the record, the Court finds the parties have adequately presented the facts and legal arguments in the briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the pending motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court finds good cause to GRANT in PART and DENY in PART the Motion to Compel.

## II.   FACTUAL BACKGROUND

On March 26, 2019, Ward was indicted on one count of Conspiracy to Distribute Methamphetamine, three counts of Possession with Intent to Distribute Methamphetamine,

and a criminal forfeiture allegation. Dkt. 1. Two of the possession charges arise from controlled buys involving a confidential informant ("CI"); the third involves methamphetamine discovered in a search of Ward's car. With respect to the latter possession charge, both the search warrant obtained for a GPS device placed on Ward's car, and the warrant for the search of the car itself, relied on information provided by the CI.

Ward seeks an order compelling the Government to disclose additional details regarding the CI's criminal history, compensation, and agreements with the Government, as well as all policies and standard operating procedures of the Bingham County Sheriff's Office and the Idaho State Police regarding: (1) recruitment, handling, corroborating, and documenting confidential informants; (2) the setup and operations of controlled buys; (3) the use of recording devices in undercover activities to document investigative and/or informant handling tactics; and (4) evidence handling procedures. Dkt. 45, at 1–2. In addition, to the extent the DEA or any other agency was involved in the investigation leading to Ward's arrest, Ward requests the above-described policies and standard operating procedures for each such agency.

The Government does not respond, and thus appears not to object, to Ward's request for specific information regarding the CI that has apparently not yet been disclosed. The Government does object to producing the requested policies and standard operating procedures for the Bingham County Sheriff's Office and the Idaho State Police, as well as to producing such documents for any other agencies involved in Ward's investigation. The Government contends Ward's request is "vague as to [the applicable] agencies and

MEMORANDUM DECISION AND ORDER - 2

overbroad as to which policies are requested."[1] Dkt. 48, at 1. In addition, the Government argues Ward's requests are conclusory and do not establish materiality.

If the Court finds that the requested items are material, the Government asks for an in camera review to determine which items should be produced due to the sensitive nature of the policies requested. *Id*. If the Court orders it to produce the policies, the Government also requests a protective order to "protect the confidentiality of the items that contain sensitive investigative techniques that are used in current and future law enforcement investigations."[2] *Id*., 1–2.

In his Reply, Ward contends the standard operating procedures and other materials the Government's agents followed with respect to the CI are material because such information will allow him to test the reliability and credibility of the Government's evidence against him and to develop his defense that he was framed. *See generally* Dkt. 49. With respect to the Government's request for an in camera review and protective order,

---

[1] In his Motion to Compel, Ward sought such policies with respect to "the investigating agencies," and did not clarify which agencies were applicable. Dkt. 45, at 1. The Bingham County Sheriff's Office and the Idaho State Police were the lead investigating agencies in this case. Dkt. 48, at 7. However, in its Response brief, the Government noted other agencies were potentially involved in Ward's investigation. *Id*. The Government explained the Idaho State Police are part of the Badges Task Force, which also includes the DEA, Bannock County Sheriff's Office, Pocatello Police Department, and Chubbuck Police Department. Dkt. 48, 2. Other than the Bingham County Sheriff's Office and the Idaho State Police, the Government only specifically identifies the DEA as having had any role in Ward's investigation. *Id*., 7. Given the Government's nebulous contention that agencies other than the Bingham County Sheriff's Office, the Idaho State Police, and the DEA *may* have been involved in his investigation, Ward clarifies in his Reply brief that he seeks the requested policies and standard operating procedures for all of the agencies involved in his investigation. Dkt. 49, at 2 n. 2. The Government could alleviate any vagueness with respect to the applicable agencies by simply identifying which agencies were involved in Ward's investigation.

[2] The Government includes an affidavit from Idaho State Police Detective Mark Graham with its Response. Dkt. 48-1, at 1. Detective Graham states the Idaho State Police standard operating procedures and policies related to the use of confidential informants and drug investigations contain sensitive and confidential procedures, and that their release may compromise future investigations throughout the State of Idaho. *Id*., ¶¶ 3–4.

MEMORANDUM DECISION AND ORDER - 3

Ward's counsel states "the Defense is willing to only disclose the [standard operating procedures] to its defense teams and others helping to prepare the defense and not disclose [them] to the Defendant directly." *Id.*, 10.

Having been fully briefed, the Motion to Compel is now ripe for the Court's review.

### III.   STANDARD OF LAW

A criminal defendant is entitled to inspect and copy documents within the government's "possession, custody, or control" if those documents are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Generally speaking, evidence is material under Rule 16 if it is relevant to the development of a possible defense. *United States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir. 2012). Rule 16 grants defendants "a broad right of discovery," which includes both exculpatory and inculpatory evidence that is relevant to the defense. *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) (cleaned up).

However, in order to compel discovery under Rule 16, the defendant must make a "threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense" *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010); *see also United States v. Sai Keung Wong*, 886 F.2d 252, 255–57 (9th Cir. 1989) ("The burden of proof is on the defendants to show need for the disclosure . . . . The mere suspicion that information will prove helpful is insufficient to require disclosure."). General descriptions and conclusory allegations are insufficient to compel discovery under Rule 16. *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995). Instead, a defendant must allege "specific facts, beyond allegations,

MEMORANDUM DECISION AND ORDER - 4

relating to materiality." *Id.* at 895. Once a defendant has demonstrated materiality, "the district court should not merely defer to government assertions that discovery would be fruitless. . . . [C]riminal defendants should not have to rely solely on the government's word that further discovery is unnecessary." *Budziak*, 697 F.3d at 1112–13.

## IV. DISCUSSION

### A. Information Regarding the CI

Ward first seeks to compel information regarding the CI that he has requested but that the Government has apparently not yet disclosed.[3] Specifically, while Ward has received information about the CI's work for the Bingham County Sheriff's Office and the Idaho State Police in this case, he has not received complete information regarding whether the CI has worked elsewhere as an informant. Dkt. 45, at 4. Ward has received information about the content of the CI's oral agreement with an agent from the Bingham County Sheriff's Office, but has not received either the full content of the oral agreement or a copy of the CI's written contract with the Idaho State Police. *Id*. While the Government provided Ward with information about the CI's criminal record in California, Ward has also not received information regarding whether this is the extent of the CI's record, or whether the CI has any pending cases. *Id*.

Ward has also not received additional information he has requested regarding the CI, including any notes or internal documentation on the CI in this case; the full extent of the CI's compensation from the Bingham County Sheriff's Office or the CI's compensation

---

[3] The Motion to Compel was ripe on December 22, 2020. If the Government has produced additional discovery since that date, the Court has not been so advised.

for giving information that led to the search warrants for Ward's vehicle; any information on whether the CI obeyed the terms of his contracts/agreements or whether he has ever provided false or unreliable information to any agency during this or other investigations; and information regarding whether the CI has ever been involved in selling methamphetamine. *Id*. at 4–5.

The government has a limited privilege to withhold the identity of confidential informants. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). "When the disclosure of an informer's identity, or the contents of his communications, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a case, the privilege must give way." *Id*. at 60–61. The Supreme Court has counseled that disclosure of information regarding confidential informants requires "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id*. at 62. Factors that are relevant to this balancing include:

> 1) Whether the information would be "relevant and helpful" to the defendant's case, especially in terms of the relationship between the asserted defenses and the likely testimony of the informant, which in turn will often depend on the degree of involvement by the informant and the charged crime, and 2) the government's interest in protecting the safety of an informant.

*Sai Keung Wong*, 886 F.2d at 255 (citations omitted).

As noted, here the Government does not appear to object to disclosing the additional information Ward seeks regarding the CI. The Government does not argue that this information is immaterial or confidential. Further, the CI's identity is known to Ward since the CI is the only individual (other than Ward) who was involved in the controlled buys

MEMORANDUM DECISION AND ORDER - 6

which are the basis for Counts Two and Four of the Indictment. The CI also provided law enforcement with the information used to obtain the warrants which ultimately allowed for the search of Ward's vehicle, and discovery of the methamphetamine, that is the basis for Count Three of the Indictment. The lack of objection by the Government, in conjunction with: (1) the CI's significant involvement in the charged crimes; (2) relationship to the defense asserted by Ward (that the CI framed him); and fact that the CI's identity is already known, each weigh in favor of granting Ward's request for additional information. *Id*.

Moreover, the Government has an obligation to provide exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). Impeachment evidence is exculpatory evidence within the meaning of *Brady*. *United States v. Giglio*, 405 U.S. 150, 154 (1972). "*Brady/Giglio* information includes 'material . . . that bears on the credibility of a significant witness in the case.'" *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) (quoting *United States v. Brumel-Alvarez*, 991 F.2d 1452, 1461 (9th Cir. 1993)). As such, the government is required to disclose promises, inducements, or threats made to a witness to gain cooperation in the investigation or prosecution of a case. *Giglio*, 405 U.S. at 155.

Thus, the CI's agreements with government agencies, his total compensation, criminal history, and reliability are not only material under Rule 16, but must be disclosed pursuant to *Brady* and *Giglio*. *Blanco*, 392 F.3d at 392–93. Ward's Motion to Compel is accordingly GRANTED with respect to the CI. The Government is ordered to provide defense counsel with the above-described information within ten (10) days of the date of this Order. If the Government desires an in camera review or a protective order before producing such information, it shall request an in camera review and/or provide the Court

with a proposed protective order, within five (5) days of the date of this Order.

### B. Policies Regarding Confidential Informants

*1. Possession and Control of the Government*

Rule 16 requires the Government to produce only documents that are within its possession, custody, or control. Fed. R. Crim. P. 16(a)(1)(E)(i). Here, the Government acknowledges that the requested policies and standard operating procedures of the Bingham County Sheriff's Office and the Idaho State Police are within its possession. Dkt. 48, at 6. In addition, documents held by another executive branch agency are deemed to be "in the possession of the government" if the prosecutor has "knowledge of and access to the documents[.]" *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). Although "a federal prosecutor need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill his or her obligations" under Rule 16, knowledge and access are presumed if the agency participated in the investigation of the defendant. *Id*. ("The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."). The Government admits the DEA participated in the investigation of Ward and is thus also in possession and control of the requested policies and standard operating procedures of the DEA.[4] Dkt. 48, at 7.

Because the documents Ward seeks are within the possession of the Government,

---

[4] Again, it is unclear whether other members of the Badges Task Force—such as the Pocatello Police Department—had any involvement in Ward's investigation. *See supra*, text accompanying note 1. If they did, then the policies and standard operating procedures of such agencies are within the Government's possession and control. *Bryan*, 868 F.2d at 1036.

MEMORANDUM DECISION AND ORDER - 8

the Court must next determine whether Ward has made a threshold showing that the policies and standard operating procedures he seeks are material to his defense.

### 2. Materiality of the Requested Evidence

As Ward notes, the Government intends to use evidence obtained from the CI to prove Ward engaged in the distribution of methamphetamine, including evidence regarding the CI's alleged controlled purchases of methamphetamine from Ward. Ward argues that he did not sell drugs to the CI and suggests that either the CI framed him, or that the CI and law enforcement worked together to frame him. To support this theory, Ward seeks the investigative agencies' policies and standard operating procedures regarding recruitment, handling, corroborating, and documenting confidential informants; the setup and operations of controlled buys; the use of recording devices in undercover activities to document investigative and/or informant handling tactics; and evidence of handling procedures.

Noting it is the potential for informant unreliability that necessitates the use of controlled purchases, Ward highlights law enforcement's "control" of a purchase from a confidential informant buttresses the credibility of a CI who has financial, penal, or other motivations to ensure a successful prosecution. Dkt. 49, at 6. Ward highlights that in order for the purchases to be "controlled," they "must be conducted in a systematic method designed to ensure the integrity of the activity. And law enforcement agencies typically have established rules, regulations, training, and procedures to make sure this is the case." Dkt. 49, at 6. If such policies are not followed, Ward stresses the "purchase is not controlled," inviting "the possibility that the operation has been tampered with or is

MEMORANDUM DECISION AND ORDER - 9

otherwise unreliable." *Id*. Ward accordingly seeks the policies and standard operating procedures regarding the use of confidential informants and controlled buys of the agencies that investigated him in order to determine whether such policies were followed in his case. Ward argues this information is crucial to the development of his defense, to possible suppression motions, and to his ultimate cross-examination of the CI and law enforcement officers involved in his investigation.

The Government counters that Ward has not based his conclusory allegation that he was framed on any specific facts or evidence. The Government also emphasizes the steps that were taken to ensure the integrity of the investigation. For example, searches were conducted of the CI both before and after each controlled buy. Dkt. 48, at 8. The CI also wore a wire that recorded his conversations with Ward for both controlled buys, and returned the wire recording device and methamphetamine purchased during the buys to law enforcement immediately after each transaction. *Id*. at 2–4. Law enforcement maintained constant surveillance of both controlled buys, and the first controlled buy was also recorded by a DEA agent. *Id*. The Government contends the GPS tracking information for Ward's vehicle and various phone conversations also verify the information provided by the CI, as does the evidence obtained in searches of Ward's car and residence. *Id*. In the absence of any specific facts or evidence that would call the integrity of the investigation into question, the Government argues the Motion to Compel must be denied.

The Court must agree with the Government. Ward fails to present any specific facts—beyond his allegation that he was framed—to establish the materiality of the policies and standard operating procedures he seeks. Ward does not identify any facts to

suggest the integrity of the investigation was compromised or that appropriate procedures were not followed. Nor does he identify any reason either the CI or law enforcement would have to frame him, or offer any facts (other than his not-guilty plea) regarding his interaction with the CI that would suggest he did not sell the CI narcotics.[5] For instance, Ward does not offer his own version of what happened during the controlled buys or identify any alternative explanation to the facts presented by the Government. Ward's Motion to Compel simply fails to offer any facts or circumstances whatsoever to show the materiality of the requested documents. Ward's conclusory allegation that he was framed, without grounding in facts, is insufficient to establish the materiality of the broad scope of policies and standard operating procedures he seeks. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).

In *Santiago*, the Ninth Circuit affirmed the district court's denial of a defendant's request for access to Bureau of Prison files on the government's inmate witnesses. *Santiago*, 46 F.3d at 893. During the pre-trial hearing, defense counsel argued that because the government planned to introduce testimony regarding the defendant's gang affiliation, the defendant needed to know for impeachment purposes whether any of the inmate witnesses were linked to rival gangs. *Id*. at 894. The Ninth Circuit held such assertions, "although not implausible, do not satisfy the requirement of specific facts, beyond allegations, relating to materiality." *Id*. at 895 (citing *Mandel*, 914 F.2d at 1219). In so

---

[5] If a criminal defendant could establish materiality simply by virtue of a not-guilty plea, any defendant who proceeds to trial could request and obtain unlimited information from the government, regardless of the confidentiality, relevance, or materiality of such information. This would eviscerate Rule 16's required showing of materiality.

MEMORANDUM DECISION AND ORDER - 11

holding, the Court explained, "[a]lthough the defense did have access to other documents relating to the government witnesses and interviewed several other prison inmates, it did not cite any fact, such as a statement by the defendant or one of the interviewed witnesses, that might link one of the witnesses to a rival gang." *Id*. The Ninth Circuit accordingly affirmed the district court's denial of discovery.[6] *Id*.

Here, Ward's theory that he was framed is not only unsupported by specific facts but is also not plausible at this stage of the case. For instance, although Ward and the CI were the only two participants in both controlled buys, Ward does not cite any fact—such as a statement made or action taken by the CI—that might support Ward's theory that the controlled buy was somehow compromised. The Court cannot order the Government to produce the broad scope of confidential policies, procedures, and training manuals used by at least three different law enforcement agencies in the absence of case-specific facts to demonstrate the materiality of the information sought.

Ward contends this case is analogous to *United States v. Stever*, 603 F.3d 747, 750 (9th Cir. 2010). In *Stever*, the defendant was charged with operating an outdoor marijuana grow operation on his family's large rural farm. *Id*. The defendant argued the marijuana was instead maintained by a Mexican drug trafficking organization ("DTO") that had

---

[6] Ward argues the Ninth Circuit's holding in *Santiago* is distinguishable because the defendant in *Santiago* was unable to establish materiality after having access to a significant amount of discovery regarding the background of the government's witnesses. Dkt. 49, at 8. Ward suggests the Government has not provided him with anywhere near the same level of access or discovery. *Id*. But, as his Motion to Compel illustrates, the Government has provided Ward with information regarding the CI, and Ward is well aware of the CI's identity. Dkt. 45, at 4–5. Ward was also present for the controlled buys which provide the basis for two of his charges. Despite this, Ward does not offer any facts to support his theory that the investigation was illegitimate.

MEMORANDUM DECISION AND ORDER - 12

recently infiltrated Eastern Oregon. To further this defense, the defendant sought production of "law enforcement reports, officer training materials, and other documents bearing on the operations" of Mexican DTOs in Eastern Oregon and California. *Id*. at 752. Ward notes the Ninth Circuit held the district court's denial of such discovery was an abuse of discretion because evidence is relevant if it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. at 753 (emphasis in original) (citing Federal Rule of Evidence 401). The *Stever* court explained the requested evidence, "if it existed, tended to show that a Mexican DTO planted the marijuana. It also tended to make it more probable that Stever was not involved, as there would then be an alternative explanation for a grow that would not entail the consent, much less the participation, of any of the Stevers." *Id*.

Unlike the defendant in *Stever*, Ward has not identified any facts to suggest the the policies and standard operating procedures of his investigating agencies would make his claimed defense more or less probable. For instance, in his motion to compel, the defendant in *Stever* drew upon news reports, publicly available information, and an email obtained from the government pursuant to an earlier discovery request to show that Mexican DTOs had recently infiltrated the area, that the operations on defendant's property bore several distinctive characteristics of Mexican DTO operations, and that Mexican DTOs tended to exclude local Caucasians from their operations. *Id*. at 751. By contrast, Ward has not highlighted any alternative explanation to the facts presented by the Government, nor offered any facts to support his allegation that law enforcement may not have followed

their policies with respect to the CI and controlled buys in this case.

In sum, Ward has not established the requested evidence is material. While the Court recognizes Ward should be afforded every opportunity to prepare his defense, he must offer more than conclusory allegations to show the requested information is material. Notwithstanding this conclusion, Ward may not have identified specific facts to establish the materiality of the requested documents because he has yet to obtain all of the information he has requested from the Government regarding the CI. Once the Government produces such materials, Ward may be able to make a threshold showing of materiality with respect to the requested policies and standard operating procedures. This aspect of the Motion to Compel is accordingly DENIED without prejudice.

## V.   ORDER

It is HEREBY ORDERED:

1. The Motion to Compel (Dkt. 45) is **GRANTED** in **PART** and **DENIED** in **PART**;

    a. The Motion to Compel is **GRANTED** with respect to the information Ward seeks regarding the CI. The Government is ordered to provide defense counsel with the information regarding the CI outlined herein within ten (10) days of the date of this Order;

    b. If the Government seeks an in camera review, and/or a protective order, prior to producing the aforementioned information, it shall request an in camera review, or submit a proposed protective order, within five (5) days of the date of this Order;

MEMORANDUM DECISION AND ORDER - 14

    c.  The Motion to Compel is **DENIED without prejudice** with respect to the policies and standard operating procedures Ward requests.

DATED: February 25, 2021

_____
David C. Nye
Chief U.S. District Court Judge